UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action 14-174-HRW

RYAN SCOTT HODGE,                                                                PLAINTIFF,

v.                          **MEMORANDUM OPINION AND ORDER**

GARY BECKSTROM,
JERRY LINDON,
DOUG NICKELL,
and
SARAH POTTER,                                                                    DEFENDANTS.

This matter is before the Court upon the Defendants Gary Beckstrom, Jerry Lindon, Doug Nickell and Sarah Potter's Motion for Summary Judgment [Docket No. 49]. Plaintiff has responded to the motion [Docket No. 55]. Defendants did not file a reply in support of their motion. For the reasons set forth herein, the Court finds that summary judgment is not warranted.

I.

This case arises from an incident which occurred at the Eastern Kentucky Correctional Complex ("EKCC") in Morgan County, Kentucky on December 9, 2013. On that day, an

1

inmate, Ryan Scott Hodge was inside the vocational wing of the facility and a section of the ceiling collapsed and fell directly on his head. [Amended Complaint, Docket No. 8, ¶ 11]. As a result, Hodge suffered injuries to his head, neck and shoulders. *Id.* at ¶ 13.

Hodge filed this lawsuit in Morgan Circuit Court against Gary Beckstrom, Warden at EKCC, Jerry Lindon, the Deputy Warden at the time of the incident, Doug Nickell, Maintenance Branch Manager for EKCC, Sarah Potter, Grievance Coordinator at EKCC, CorrectCare-Integrated Health, Inc. ("CCIH"), a health care provider at EKCC and Heather Nickell, an RN working at the prison. In his Complaint he alleges violation of his civil rights under 28 U.S.C. § 1983 as well as negligence, gross negligence, medical malpractice, intentional infliction of emotional distress and interference with his administrative remedies. [Docket No. 8].

Defendants filed a Notice of Removal. [Docket No. 1]. Plaintiff filed a motion to amend his Complaint in order to add Correct Care Solutions, LLC ("CCS"), RN Nickell's employer, as a Defendant and to allege an additional federal claim under the 8th Amendment. [Docket No. 5]. The undersigned sustained both the removal as well as the motion to amend. [Docket Nos. 6 and 7]. Discovery was conducted.

Hodge accepted CCIH's Offer of Judgment [Docket No. 32]. CCS and RN Nickell were also dismissed from the lawsuit [Docket No. 41].

Now the remaining Defendants, Beckstrom, Lindon, Nickell and Potter, seek judgment as a matter of law. They argue, first, that Hodge failed to exhaust his administrative remedies prior to filing this lawsuit and, therefore, his civil action must be dismissed. Alternatively, they claim that they are immune to suit by virtue of qualified immunity.

## II.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The party seeking summary judgement bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986); *Moore v. Phillip Morris Cos., Inc.,* 8 F.3d 335, 339 (6th Cir.1993). All facts and all inferences to be drawn must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Burchett v. Kiefer,* 301 F.3d 937, 942 (6th Cir.2002).

Once the moving party presents evidence sufficient to support its motion, the non-moving party must demonstrate the existence of a genuine issue of fact; it must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The issue of fact must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989). "The inquiry performed is the threshold inquiry of determining whether there is a need for a trial— whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

### III.

Defendants argue that Hodge did not exhaust his administrative remedies prior to filing this lawsuit and, as such, his case must be dismissed pursuant the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997.

The PRLA § 1997e(a) requires a prisoner to exhaust all of his available administrative remedies before filing a §1983 action in federal court, *Brown v. Toombs,* 139 F.3d 1102, 1103–04 (6th Cir.1998). Before the district court adjudicates any claim set forth in the prisoner's complaint, the court must determine that the he has complied with this exhaustion requirement. *Id.* at 1104. The prisoner bears the burden of demonstrating that he has exhausted these remedies. *Id.*

Congress, however, in enacting the PLRA, explicitly provided that an inmate must only exhaust "available" remedies. In *Ross v. Blake*, --- U.S. ---, 136 S.Ct. 1850 (2016), the United States Supreme Court Court delineated three situations in which a remedy, although officially on the books, is not, in fact, **available**.

First, an administrative procedure is unavailable when, even though officially offered, in practice, "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859.

Second, an administrative procedure is unavailable in a situation in which an administrative procedure is "so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.*

Third, an administrative remedy is not available when a prisoner can show that "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1860.

Under Sixth Circuit case law, courts must analyze "whether an inmate has made affirmative efforts to comply with the administrative procedures and whether those efforts to exhaust were sufficient under the circumstances." *See John Does 8-10 v. Rick Snyder, Warden, et.al.,* 945 F.3d 951 (6th 2018), *quoting Risher v. Lappin*, 639 F.3d 236 (6th Cir. 2011). " [W]hen a reasonable policy is in place, but is silent or vague in a particular circumstance, courts must look to see whether the prisoner has attempted to satisfy the requirements of the policy." *Napier v. Laurel Cty.*, 636 F.3d 218, 223 (6th Cir. 2011). For instance, the Sixth Circuit held that an inmate sufficiently complied with a prison's grievance procedure even though, contrary to the rules, he appealed a previous denial without including a copy of it (which officials never gave him). *See also, Risher*, 639 F. 3d at 240 (declining to "impose requirements on Risher for exhaustion purposes that go beyond what was specifically required by the Bureau's grievance procedure"). But to be sure, "even when a policy is vague, a prisoner must do what is required by the grievance policy." *Napier*, 636 F.3d at 224 (holding that a prisoner did not exhaust remedies when he "simply chose not [to] file a grievance").

EKCC has an administrative grievance procedure. The procedure requires, *inter alia*, that each grievance may only contain a single issue seeking a single remedy. [Corrections Policies and Procedures 14.6, Docket No. 49-10].

Between May and October of 2014, Hodge filed seven grievances pertaining to the ceiling collapse and his resulting injuries. Copies of the grievances are attached to his Complaint. [State Court record, Docket No. 1-1]. These grievances were not distinct and

separate; at least three of them were returned to Hodge with instructions to resubmit the grievance. The successive grievances demonstrate Hodge's efforts to comply with the vague and confusing instructions given to him by EKCC's Grievance Coordinator Sarah Potter by way of a check-the-box form.

For example, on May 27, 2014, Hodge completed an Inmate Grievance Form in which he described his difficulty in getting his medication from RN Nickell and described her threats to "put [Hodge] in the hole" and have him "fired from [his] job for seeking medical help." [Docket No. 1-1, p. 12]. He stated that Nickell's behavior has been ongoing since his injury in December 2013. In the grievance, Hodge stated that he "want[s] [Nickell] to stop interfering with the other doctors and nurses trying to do their jobs." *Id.* Two days later, Potter returned the grievance to Hodge. In a check-the-box form, Potter indicated that the reason for returning the grievance was "other," writing, "[y]ou need to change your action requested sounds too demanding and I would like for you to please change the wording." *Id*. at p. 14. She also checked the box for "you may resubmit with the above problem(s) corrected." *Id.*

When asked in her deposition about this grievance, Potter testified that she did not recall discussing it with anyone to see if they shared her opinion that it should be returned to Hodge. [Deposition of Sara Potter, Docket No. 56-5, p. 31, l. 15-20]. Nor did she speak to Hodge or provide further guidance, either in writing or in person, as to how he might edit his grievance so as to fix it. *Id.* at p.11, l. 9-12. She did not recall if she suggested Hodge seek the assistance of a grievance aide. *Id.* at p. 13, l. 5-7. Her rejection, in effect, of the grievance was based solely upon her "feeling" that it sounded "too demanding". *Id.* at p. 11, l. 11.

In *Napier*, *supra*, the Sixth Circuit addressed the deficiencies of a vague prison policy. Here, we have not a vague policy but a vague application of the same by a prison official. The

6

other side of the grievance coin would appear to warrant *Ross*-type scrutiny: did Hodge make affirmative efforts to grieve? Was the prison's response clear?

Another example is Hodge's grievance dated October 13, 2014. [Docket No. 1-1, p. 15]. In it he stated that the ceiling in the vocational wing continues to leak and expressed concern that it may fall again, causing injury to someone as it did to him. *Id.* He also stated that the injury to his neck was not improving and he feared it may be permanent. *Id.* In the section entitled "Action Requested" he asked that he be "fairly compensated" for "past and future pain and suffering" and "future accommodations" which may be needed for his injury. *Id.* He also asks that the ceiling be repaired. *Id.*

Three days later, using the same form described *supra*, Potter returned the grievance to Hodge, again indicating that the reason for returning the grievance was "other", stating "[y]ou are grieving too many issues. You need to either file on the 'pain and suffering' or (underscored) the ceiling to be fixed in the vocational wing'." *Id*. at p. 16. However, she did **not** check box for "you may resubmit with the above problem(s) corrected." *Id.* Her response, while conforming the grievance policy of "only one grievance at a time", appears to be somewhat contradictory. Redo but do not resubmit?

Regardless of the confusing directive from Potter, Hodge soldiered on and submitted another grievance the very same day, asking to be "fairly compensated for past and future pain and suffering and "future accommodations" which may be needed for his injury. *Id.* at p. 17.  In the "Action Requested" section, he made no mention of ceiling repairs.  This would appear to comport with Potter's instructions.

However, eight days later, using the same form described *supra*, Potter returned the grievance to Hodge, again indicating that the reason for returning the grievance was "other." *Id*. at p. 18. She wrote:

> You (sic) brief statement of the problem is okay, it would make it a medical grievance. However your action requested is not in tune with the statement of the problem. You need to rewrite the action requested and make it a medical grievance issue. Since you have not gone through the medical grievance process you cannot grieve compensation since the medical issue has not been resolved yet.

*Id.* This time, she did check box for "you may resubmit with the above problem(s) corrected." *Id.*

Two days later, Hodge, again, submitted a grievance, again seeking to be "fairly compensated for past and future pain and suffering and "future accommodations" which may be needed for his injury. *Id.* at p. 25.

Again, Potter returned it. Again, she based her action on "other," writing:

> I have repeatedly returned this grievance to you so you could correct the issues listed. I am ruling this grievance MOOT due to the failure to fix the requested issues. I have however filed grievance 14-552 as a medical issue.

*Id.* ay p. 26 .

Hodge filed this lawsuit in Morgan Circuit Court less than a month later.

Defendants seek dismissal of this civil action, contending that Hodge failed to exhaust his administrative remedies under § 1997(e) and its state law counterpart, KRS 454.415.  Without a single citation to the grievances themselves or Potter's testimony, they conclude that there "is no evidence that Ms. Potter improperly handled Mr. Hodge's grievances."

8

Yet, in the check-the-box forms which rained upon Hodge, Potter's directives were not always clear. "Too demanding" could mean different things to different people. "Moot" is legalese that Hodge may not have understood. "Redo but do not resubmit" is so internally contradictory that is may as well be Greek.

Further, Potter's own deposition testimony casts a shadow on Defendants' assertion of the proper and pristine handling of Hodge's grievances. She does not recall actually speaking with Hodge regarding the shortfalls of his grievances. Indeed, she did not speak to anyone in this regard. It would seem that in her view, her instructions were crystal clear.

However, a reasonable juror could see it differently. A reasonable juror could conclude that despite Hodge's good faith efforts to comply with her problematic directives, Potter's failure to provide coherent guidance rendered the administrative process of which she was in charge **unavailable**.

Notably, in addition to failing to cite to any depositions, affidavits or exhibits, Defendants do not mention any pertinent caselaw. They cited one in support their failure-to-exhaust argument and it predates the seminal case on this issue – *Ross*. What of *Ross* and its progeny? Aside from quoting their own policy as well as the pertinent federal and state statutes, they do not discuss, much less establish, the absence of any disputed issue of fact pertaining to Hodge's efforts to exhaust his administrative remedies. They simply cite their administrative procedure and exclaim that Hodge failed exhaust it. This is insufficient.

The Defendants are not entitled to summary judgment based upon Plaintiff's alleged failure to exhaust because they have not carried their burden "to establish the absence of a genuine dispute of material fact" on the issue. *See Does 8–10,* 945 F.3d at 961 (holding

defendants bear the burden of proof, reversing summary judgment based upon disputed issues of fact concerning plaintiffs' attempts to exhaust).

### III.

Defendants argue that they are immune to suit due to qualified immunity. The doctrine of qualified immunity protects government actors performing discretionary functions from liability for civil damages only when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It insulates state actors from liability in close-call situations. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Qualified immunity is an affirmative defense. Once raised, "the plaintiff must show that (1) the defendant violated a constitutional right and (2) that right was clearly established." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013). The qualified immunity defense may be raised at any stage of the case. When it is raised in a motion for summary judgment, as here, courts must weave the summary judgment standard into each step of the qualified immunity analysis. *Scott v. Harris*, 550 U.S. 372, 378 (2007). In other words, the court must view the facts in the light most favorable to the plaintiff. "In qualified immunity cases, this usually means adopting ... the plaintiff's version of the facts." *Id.*

Hodge claims that Defendants violated his 8th Amendment rights. The 8th Amendment to the United States Constitution forbids the government from inflicting "cruel and unusual punishments" upon any individual convicted of a crime. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). *See also, Hudson v. McMillion*, 503 U.S. 1, 8 (1992). The United States Supreme Court has interpreted this language to provide a means for prisoners to challenge their conditions of

confinement while in custody. *Id.* While the Eighth Amendment's prohibition against cruel and unusual punishment "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981), the conditions of confinement must be at least "human". *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

To challenge a prison condition under the 8th Amendment, a prisoner must demonstrate (1) that the challenged condition he faces is "sufficiently serious," and (2) that prison officials acted with deliberate indifference to the condition. *Farmer*, 511 U.S. at 534. These requirements are known as the objective prong - whether the condition is "bad" enough to merit protection - and the subjective prong - whether the prison officials had a mindset that was inappropriate. *Thaddeus-X v. Blatter*, 175 F.3d 378, 402 (6th Cir. 1999). A prison official may be found to have had a sufficiently culpable state of mind if he participated directly in the alleged event, or learned of the inmate's complaint and failed to remedy it, or created or permitted a policy that harmed the inmate, or acted with gross negligence in managing subordinates. *Gaston v. Coughlin*, 249 F.3d 156, 164 (6th Cir. 2001).

In his Amended Complaint, Hodge alleges that the Defendants' failure to provide a safe environment, free of obvious hazards, raises an 8th Amendment claim. The focus of his allegation is the ceiling, which collapsed and fell on his head. In their dispositive motion, Defendants argue, first that Hodge fails to allege any "unconstitutional" behavior and, second, that even if Hodge has alleged an 8th Amendment claim, they bear no responsibility for the conditions of confinement of which he complains.

Again, Defendants motion is devoid of any supporting affidavits or testimony. As such, the court must read between the lines. With regard to Hodge's allegation of unconstitutional behavior, it may be that Defendants believe that his 8th Amendment rights were not "clearly

established," as required in the qualified immunity analysis. This could be because Hodge has presented, nor is this court aware of, a case with the same situation, i.e. a ceiling collapsing on an inmate's head. Yet although citing an analogous case is the shortest route to proving a "clearly established" right, it is not the only way to skin a cat. The qualified immunity inquiry "[d]does not require a case directly on point [if] existing precedent has placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)(citations omitted). Instead, the operative inquiry is whether a reasonable official would understand that his or her conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). This is the intersection where the subjective prong of the inquiry is subsumed by the objective prong, a sticky wicket for law students and lawyers.

However, in this case, the Defendants' own testimony easily satisfies what is usually an inquiry riddled with conjecture and uncertainty. Defendants knew the ceiling was prone to leaks and often needing repair. In fact, such repairs had been done in the past. In other words, they were on notice of the hazardous condition. Defendant Gary Beckstrom, the Warden at EKCC, testified that parts of the ceiling had leaked in the past, on "several" occasions. [Deposition of Gary Beckstrom, Docket No. 56-2, p. 23, l. 7-12]. Defendant Jerry Lindon, the Deputy Warden at the time, testified that the roof is old and several requests for its replacement have been made to no avail. [Deposition of Jerry Lindon, Docket No. 56-3, p. 9, l. 6-11]. Defendant Doug Nickell, the Maintenance Manager, testified that every time it rains, new leaks appear. [Deposition of Doug Nickell, Docket No. 56-4, p. 14, l. 11-14]. A Work Order from EKCC procured in discovery reveals that holes and leaks in the ceiling were routinely reported in 2013 in the months leading up to the ceiling collapsing. [Docket No. 55-3]. In fact, this document establishes there was water leaking and paint falling from the ceiling in the very area in which

Hodge was injured. According to the document, the drains were cleared, the holes were patched, and the paint scraped. Stop-gap measures for what appears to be an ongoing problem. Lindon testified that roof leaks remain a maintenance problem at EKCC. [Docket No. 56-4, p. 6-8].

Defendants' testimony clearly establishes notice. They have not refuted their own testimony or presented any evidence which suggests there were unaware of the ceiling issue and the appurtenant safety concerns. Viewing these facts in a light most favorable to Hodge, as Rule 56 requires, the court concludes that a reasonable juror could find that Defendants were aware of facts from which the inference could be drawn of a substantial risk of harm existed and they either ignored or failed to properly rectify the risk. In other words, Hodge has properly alleged an 8th Amendment claim and Defendants have not demonstrated the absence of disputed issues of material fact. As such, they are not entitled to summary judgment. *See Stoudemire v. Mich. Dept. of Corrections*, 22 F.Supp.3d 715 (E.D. Mich .2014) (finding that factual question as to whether warden was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed precluded summary judgment on issue of qualified immunity).

Indeed, by placing their credibility at issue, Defendants have foreclosed the possibility of summary judgment. "[W]here the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *McKenna v. Edgell*, 617 F.3d 432, 437 (6th Cir. 2010)).

Rather than refute their knowledge of the ceiling's condition, Defendants attempt to evade Hodge's allegations by arguing that they do not have the power to fix it. They state that their responsibilities do not include authorizing capital expenditures for which no appropriation has been made. In other words, the executive branch holds the bag. Yet, again, their own testimony belies their argument. Lindon testified that anytime a leak was reported, it was

"checked, and found, and, if possible repaired." [Docket No. 56-3, p. 14, l. 21-25]. Nickell testified "[w]e repair spots all the time." [Docket No. 56-4, p. 9, l. 24]. Indeed, Nickell testified that if materials are not on hand for such a repair, "we'd go down to the local hardware store here and get it. Get whatever we need to fix you know…." *Id.* at p. 12, l. 22-23. Neither mentioned making a stop at Frankfort to obtain an appropriation for a capital expenditure. Hodge maintains that Defendants' argument about funding and appropriations is a "red herring." The court agrees.

The United States Supreme Court has described the qualified immunity doctrine as a balancing of "two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Here, there are questions as to whether Defendants acted responsibly and reasonably, questions which go to the very heart of Hodge's 8th Amendment claim. Given the existence of material facts in dispute and the necessity of credibility determinations, Defendants are not entitled to qualified immunity and summary judgment is not warranted. *See Gardenshire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000) ("[S]ummary judgment would not be appropriate if there is a factual dispute (*i.e.,* a genuine issue of material fact) involving an issue on which the question of immunity turns….").

**IV.**

Rule 56 contemplates a back and forth between the parties. First, the party seeking summary judgment must establish that a fact is not or cannot be genuinely disputed. Rule 56(c) states:

> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed **must** support the assertion by:
> (A) **citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials**; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.Proc. 56 (c).

This initial burden was upon Defendants to supporting their motion with materials in the record, such as depositions or affidavits. Yet, aside from copies of EEKC's policies, they did not support their motion in the way envisioned by Rule 56.  Given that Defendants failed to carry their burden, one could argue that Hodge was not required to respond with his own 56(c) documentation in order to defeat summary judgment. *See Gaston v. Coughlin*, 249 F.3d 156 (6th Cir. 2001)(finding prison officials had actual knowledge of unsanitary conditions at prison where they did not submit an affidavit or other sworn evidence denying the same and denying summary judgment).  But Hodge did respond.  In fact, he used Defendants' own deposition testimony and documents to present genuine issues of material fact. As such, Defendants are not entitled to summary judgment.

Accordingly, **IT IS HEREBY ORDERED** that Defendants Gary Beckstrom, Jerry Lindon, Doug Nickell and Sarah Potter's Motion for Summary Judgment [Docket No. 49] be **OVERRULED**.

This __5th__ day of August 2020.



**Signed By:**
**Henry R Wilhoit Jr.**
**United States District Judge**

15